1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA,      : 14-CR-00277(DLI)
                               :
                               :
                               : United States Courthouse
        -against-              : Brooklyn, New York
                               :
                               :
                               : Friday, August 15, 2014
SYED IMRAN AHMED,              : 11:22 a.m.
                               :
        Defendant.             :
                               :
                               :
- - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE DORA L. IRIZARRY
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Government: LORETTA E. LYNCH, ESQ.
                    United States Attorney
                    Eastern District of New York
                      271 Cadman Plaza East
                      Brooklyn, New York 11201
                    BY:  F. TURNER BUFORD, ESQ.
                      WILLIAM CAMPOS, ESQ.
                      ERIN ARGO, ESQ.
                      Assistant United States Attorney

For the Defendant:  WILSON SONSINI GOODRICH & ROSATI, PC
                      1301 Avenue of the Americas
                      40th Floor
                      New York, New York 10019
                    BY:  MORRIS J. FODEMAN, ESQ.
                      CATHERINE S. GREALIS, ESQ.

Court Reporter:     SHERRY J. BRYANT, RMR, CRR
                    225 Cadman Plaza East
                    Brooklyn, New York 11201
                    sbryant102@verizon.net

Proceedings recorded by mechanical stenography, transcript
produced by Computer-Assisted Transcript.

                              USA v AHMED                          2

1            (In open court.)

2            (Defendant enters the courtroom.)

3            COURTROOM DEPUTY:  Criminal cause for status

4    conference, Docket Number 14-CR-277, United States versus Syed

5    Ahmed.  Please state your appearances.

6            MR. BUFORD:  Good morning, Your Honor.  It's Turner

7    Buford for the United States, and with me at counsel table are

8    Assistant United States Attorneys William Campos and Erin

9    Argo.

10           THE COURT:  Good morning to all of you.  For the

11   defendant.

12           MR. FODEMAN:  Good morning, Your Honor.  Moe Fodeman

13   and Catherine Grealis from Wilson, Sonsini, Goodrich & Rosati

14   here in New York, with our client, Dr. Ahmed.  Good morning.

15           THE COURT:  Good morning to all of you.

16           THE DEFENDANT:  Good morning.

17           THE COURT:  So where are we on this matter?  I've

18   seen that there has been some discovery that's been tendered.

19   Where are we moving?

20           MR. BUFORD:  Your Honor, since the last status

21   conference, in addition to producing some substantive

22   documents, the government has taken steps to further refine

23   the description of the information available to the defense

24   from the search warrant, search warrants that were executed in

25   this case, including producing the underlying applications and

1   court papers as well as documents related to the execution of

2   the warrants.

3              So sketches of the respective premises, photographs

4   of the respective premises, and some inventory documents with

5   respect to what was seized.  And the hope is that this will

6   facilitate review by the defense.

7              We've also prepared an inventory of the electronic

8   images that were taken by the government during execution of

9   the warrants.  It is a substantial amount of material.  We've

10  broken it down by site, by device, by the size of the raw

11  forensic image for each device, and then the size of the

12  extracted files, that is, the files that the Office of

13  Inspector General for the Department of Health and Human

14  Services has been able to extract from the forensic images.

15             And the hope is that this will facilitate a review

16  in stages by the defense.  Of course, we're happy to provide

17  it all in bulk if that's the way to go.  It is a substantial

18  volume of material.  It is a relatively complex case involving

19  review of medical records.

20             The government is, of course, doing its own review

21  and is producing relevant documents as it identifies them on a

22  rolling basis.  We've made one production along those lines

23  since the last status conference, and we expect there will be

24  some others.

25             THE COURT:  This is all now electronic material?

1        MR. BUFORD:  Yes, that's right, Your Honor.  The

2   government did seize approximately 37 boxes worth of hard copy

3   documents which have been available to the defense, but I'm

4   told that we are almost finished the process of having them

5   scanned such that we can make them available electronically as

6   well.  That will hopefully facilitate review.

7        But, given the volume of the material, it's

8   necessarily a painstaking process I think for both sides.  And

9   obviously, Dr. Ahmed is currently incarcerated, so that slows

10  the review to some extent, although we've been having

11  discussions with the defense about reaching out to the MDC,

12  which we've done, to see if there can be some accommodations

13  that might help Dr. Ahmed with his own individual review of

14  the materials.  I think we have some options that we'll

15  continue to discuss with the defense along those lines.

16        But I was able to speak with Mr. Fodeman and

17  Ms. Grealis prior to today, and I think the parties would

18  jointly and respectfully propose that we set another status

19  conference for approximately 60 days out so that we can -- the

20  defense can continue to review the materials, the government

21  can continue to produce relevant documents if we identify

22  them, and we can also continue to see if there's any

23  possibility for resolution short of trial.

24        THE COURT:  In terms of the electronic data and the

25  production of the electronic data, what is best for counsel to

1    provide to the government?  I know sometimes where the data is

2    extensive, as it appears it is here, sometimes the government

3    wants the defense to provide a hard disk.  And so I just want

4    to get an idea if that might be the best way to go for the

5    defense and approximately how many hard disks will be needed,

6    because they're going to want to make a request for

7    authorization for that kind of discovery, and it might require

8    consulting with Jerry Tritz further to see what's the cheapest

9    way to get the proper vehicles to the government so that this

10   can be expedited.

11            MR. BUFORD:  One of the reasons we generated the

12   inventory was to help with that process, Your Honor.  It's my

13   understanding that the raw forensic images for each of the

14   devices, if you were to add them up cumulatively, come to

15   multiple terabytes worth of data, which is very large.

16   Obviously, the extracted files, so the sort of usable working

17   files from each device, again, if you add them up

18   cumulatively, my understanding is they come in at

19   approximately 1 terabyte worth of material.

20            So we're happy to provide either the complete set of

21   forensic images or the complete set of extracted files or both

22   to the defense.  We're also happy to provide it on a sort of

23   device-by-device basis if the defense has certain computers

24   that they're more interested in than others.

25            My understanding is, for all of the electronic

1    materials, if we went with just the extracted files, it would

2    need to be on a hard drive to give it.  One hard drive I think

3    might be sufficient.  If the forensic images are what's wanted

4    for all of the devices, I think we're talking about multiple

5    hard drives.

6              It's possible, if the defense would prefer to review

7    it on a computer-by-computer basis, that we might be able to

8    provide it in stages on disks.  But I think if we're to

9    provide it in bulk, it would have to be at least on one hard

10   drive.

11             THE COURT:  What's your preference, Mr. Fodeman?

12             MR. FODEMAN:  Well, let me start by saying that the

13   amount of discovery here seems almost staggering, obviously.

14   And --

15             THE COURT:  Well, the deeper into the electronic age

16   that we get, the more staggering it is.

17             MR. FODEMAN:  That's true.  And here, obviously, the

18   government has done a thorough investigation and has done a

19   number of search warrants and recovered a number of devices,

20   so that's --

21             THE COURT:  And I'm also pleased that they're

22   working on it quickly to review and to get this in a form

23   that's available and searchable.

24             MR. FODEMAN:  They've been great and I compliment

25   them.  They've been helpful and we've worked together I think

1    very well in trying to get us the stuff as quickly as

2    possible.  That's most critical.

3           I don't know if I'm in a position to say whether I

4    need all of it or some of it or it's better to go piece by

5    piece until I sort of have a better sense of what's out there,

6    and that will involve conversations with the client and with

7    Mr. Buford and the rest of the team.  But I don't expect it to

8    be a problem and if we need funding, we'll come to you.

9           One issue that's come up -- and Mr. Buford alluded

10   to it -- is, obviously, the challenge here is made greater by

11   the fact that Dr. Ahmed is in custody.  Not only does he need

12   to review the materials, but we need -- we need him to be able

13   to review the materials so he can educate us about the case.

14   This is, obviously, a technical sort of case and it involves

15   medical records and stuff that, candidly, I'm not particularly

16   familiar with and Dr. Ahmed is.

17          The government has been good enough to explore our

18   various options.  I have to say that so far, it's been

19   challenging giving him the access he needs, but I think we

20   might have come up with a solution, which would involve our

21   firm providing a blank laptop computer and then loading it up

22   with all the discovery and then providing it to the MDC to

23   store at a specific location, I believe in the visitors' room,

24   and give Dr. Ahmed generous opportunity to sit with the

25   computer and look at the discovery.

1      THE COURT:  I imagine that that kind of a computer

2  has to be Internet disabled.

3      MR. FODEMAN:  Yes, that's one of the requirements,

4  and we've talked to our IT folks and that can be done.

5      THE COURT:  Okay.

6      MR. FODEMAN:  So I guess all that by way of saying I

7  don't know if we need the Court's intervention at this point

8  on any of that, because I think we're moving in the right

9  direction.  And should that change, we'll certainly write to

10  the Court and let you know about the issue and we can take it

11  up at that point.

12      THE COURT:  Well, I'm always happy to hear that the

13  parties don't think you need court intervention.

14      MR. FODEMAN:  I thought you might.

15      THE COURT:  I was just -- I wanted for myself also

16  to know what I can be looking at down the road, in terms of

17  fiscally what's going to be the expenditures here.  And I'll

18  leave it entirely up the defense team to determine whether you

19  want to submit hard drives or what format you want to do that.

20      And I, of course, encourage you to reach out to

21  Jerry Tritz, because the hard drives can get expensive and he

22  usually has various different sources for reasonably priced

23  equipment.  And so I would encourage you to continue to follow

24  up with that.

25      And are you in agreement that you would -- it sounds

USA v AHMED                                                9

1   like you will need at least an additional 60 days.  I have

2   back-to-back trials so I continue, probably moving into the

3   month of December, to only have Fridays available.  So we're

4   looking at around October; correct?

5           MR. FODEMAN:  Yes, I think that makes sense.  Judge,

6   one Friday I know I'm away in the middle of October.

7           THE COURT:  I'm actually looking at maybe October

8   24th, in the afternoon.

9           MR. FODEMAN:  That's fine.  That's fine with us.

10          THE COURT:  Is that good for the government?

11          MR. BUFORD:  Yes it is, Your Honor.

12          THE COURT:  Is 2:30 okay?

13          MR. BUFORD:  Yes.

14          MR. FODEMAN:  Judge, if I could just speak to my

15  client?

16          THE COURT:  Sure.  Of course.

17          (Defendant confers with counsel.)

18          MR. FODEMAN:  The issue, Judge, is regarding prayer

19  and access to prayer, but I think that's more midday.  Were

20  you proposing -- I'm sorry, 2 --

21          THE COURT:  2:30.

22          MR. FODEMAN:  That should be fine.  Presuming -- I

23  assume the marshals have an ability to provide folks with an

24  opportunity to pray downstairs during the 1:00 hour, whenever

25  that happens.

1          THE COURT:  I have one of the marshal supervisors
2    here and he's nodding his head yes, that that can be
3    accommodated.
4          MR. FODEMAN:  Very good.
5          THE COURT:  Okay.  All right.  So then 2:30 on
6    October 24th for a further status conference.  This has been
7    deemed a complex case.  Nonetheless, does the defense consent
8    to the exclusion of time?
9          MR. FODEMAN:  If I can just run that by the client.
10         THE COURT:  Of course.
11         (Defendant confers with counsel.)
12         MR. FODEMAN:  Yes, that's fine, Judge.
13         THE COURT:  So it's excluded, again, in the interest
14   of justice, it's a complex case, and also on consent.
15         And then there is an ex parte matter just relating
16   to CJA authorizations.  If the government doesn't mind, I
17   would like to speak to Mr. Fodeman about that.  And it has
18   nothing to do with the substance of the case.
19         And if there's nothing else -- anything else that
20   the parties want to address today?
21         MR. BUFORD:  No, Your Honor.
22         MR. FODEMAN:  Nothing from us.
23         THE COURT:  Again, thank you for your patience this
24   morning.  It's been a little hectic today.  Marshals, you can
25   take charge.  I just need to speak with Mr. Fodeman for one

USA v AHMED                                                11

1    minute.

2              MR. BUFORD:  Thank you, Your Honor.

3              THE COURT:  Thank you.

4              (Whereupon, the matter was concluded at 11:35 a.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

12

1          I certify that the foregoing is a correct

2    transcript from the record of proceedings in the

3    above-entitled matter.

4

5                    /s/  Sherry Bryant
                     Sherry Bryant, RMR, CRR
6                    Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25